CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 14 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHARLES A. BLY,<br><br>*Defendant.* | CRIMINAL CASE NO. 3:04-CR-00011<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the court on Defendant's Amended Motion to Dismiss received by the Court on October 9, 2005. On February 4, 2004, a grand jury charged Defendant with three counts of mailing threatening communications in violation 18 U.S.C. § 876(c), one count of transmitting in interstate commerce a threatening electronic mail communication in violation of 18 U.S.C. § 876(c), and one count of mailing a communication threatening to injure the person of another with the intent to extort in violation of 18 U.S.C. § 876(b).

With respect to all counts, Defendant argues that his communications are protected by the First Amendment as a matter of law. Defendant also urges that no evidence of interstate commerce has been produced by the government and that Count Two therefore should be dismissed in advance of trial. Finally, Defendant contends that Count Four of the indictment, which charges him with attempting to extort from the University of Virginia ("UVA") "a sum of money or other thing of value" must be dismissed because the University is not a "person" within

1

the meaning of 18 U.S.C. § 876(b).

The Court turns first to Defendant's argument that the indictment must be dismissed because the speech on which is based is protected by the First Amendment as a matter of law. "True threats" are not constitutionally protected. *Watts v. United States*, 394 U.S. 705, 707-08 (1969); *R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992)("threats of violence are outside of the First Amendment"). "True threats" encompass statements "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). However, a court cannot sustain a conviction for speech that is mere "political hyperbole" rather than a true threat. *Watts v. United States*, 394 U.S. 705, 708 (1969). In cases in which there is a question whether a communication is a threat, the Fourth Circuit has held, "If there is substantial evidence tending to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of letter would interpret it as a threat of injury, the court should submit case to jury." *U.S. v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973).

Citing *Watts,* Defendant argues that his statements are protected by the First Amendment because they are only conditional threats.[1] In *Watts*, the defendant had stated at a political

---

[1] Upon his termination from the University of Virginia's graduate program, Defendant started sending letters and emails regarding his allegations of plagiarism and unfair treatment by UVA personnel. The five counts with which Defendant is charged involve four separate writings. The Government alleges that on July 30, 2003, Defendant mailed a letter entitled "REQUEST FOR LONG-DENIED JUSTICE IN THE PLACE OF CONTINUED OBFUSCATION, COVER-UP, EXPEDIENCY REGARDING THE BLY CASE" that included the statement, "When I asked Dr. Rydin [Defendant's former doctoral thesis advisor] to stop upstaging/preempting my introduction of my research in the spring of 1996, his response was that he was 'out of control, and couldn't stop himself'. And if I lost my self-control, Rydin would be a ghost of his present self. The reason I haven't until now is I don't want to confuse the issue of who is the victim and who is the abuser." On August 12, 2003, Defendant sent an email which

2

gathering, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts*, 394 U.S. at 706. Defendant was charged and convicted of threatening the president. The Court concluded that the statement was constitutionally protected "political hyperbole," noting the conditional nature of the threat, the context in which the statement was made (at a rally), and the fact that the audience laughed in reaction to the speech, and reversed the conviction. *Id.* at 708.

As the Fourth Circuit's decision in *United States v. Lockhart*, 382 F.3d 447 (4th Cir. 2004) illustrates, this case is distinguishable from *Watts*. In *Lockhart*, the defendant approached a Food Lion supervisor about available job positions. As she was leaving, she handed the supervisor a letter which stated, "If George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head." *Id.* at 450. Lockhart was charged with

---

stated, "I trust by not resorting to violent retribution against Dr. Rydin, Dr. Brenizer [another member of Bly's faculty review committee], and others, I have preserved my possibility of justice in keeping with the truth. I do not want to believe the only way to obtain justice is to physically harm Rydin and Brenizer. It shouldn't be necessary for me to achieve justice, that I leave the role of the victim, and become like Rydin and Brenizer, an abuser who deserves the disdain of society...If I harm Rydin and Brenizer, there is no going back." On November 29, 2004, Defendant mailed another letter entitled "TIME FOR A REALITY CHECK" in which he wrote, "It would be a damn shame if the only way I could obtain justice in this element of class warfare is to kill Dr. Rydin. This is not venting. I promise you, this is DEADLY SERIOUS. Please get your ass in gear so I am not left with retribution, retaliation, and vigilante justice as the only justice available to me. NO JOKE....Remember my belief in bullets as the ultimate backup for futile dialogue." (emphasis in original). Finally, in a letter dated January 1, 2004, Bly wrote "bullets are far cheaper and more decisive. A person with my means and abilities can stand at a distance of two football fields and end elements of long-standing dispute with a twitch of my index finger....The[se] comments simply point out an expedience that is available when all civil approaches to the justice I deserve fail, as has been the case." Attached to the January 1, 2004 letter are copies of five targets punctured by evident bullet holes, which Bly referred to as "evidence of a talent I possess for gun control - hitting the target."

3

threatening to kill the president. The court refused to dismiss the indictment, distinguishing *Watts*:

> There is nothing in its contents that signals it is intended to be a joke....[T]he manner in which Miss Lockhart gave the letter to its recipients is different from a speech at a political rally. Nothing in Miss Lockhart's actions suggest she intended to engage in political discourse with the Food Lion management. Finally, the threat is not conditional in the same manner as the threat in Watts. Watts involved a threat made "expressly conditional" on being drafted into the United States military. Miss Lockhart's threat, while grammatically conditional--it begins with the phrase "[i]f George Bush refuses to see the truth and uphold the Constitution"--does not indicate what events or circumstances would prevent the threat from being carried out beyond the broad statement that the President must "see the truth" and "uphold the Constitution".... Thus, in the context in which it was delivered, the threat was not "expressly conditional" in nature as that term is described in *Watts*.

*Id.* at 452 (internal citations omitted).

Similarly, all of Mr. Bly's communications are only "grammatically conditional" and either implicitly or explicitly promise violent retribution if Mr. Bly does not receive the justice to which he feels he is entitled. The reader is left unsure what measure of justice would appease Mr. Bly. Further, although some of Bly's writings express broad concern for UVA's institutional failings and could be characterized as "political" in nature, his letters reveal an overriding goal of obtaining personal justice, and are not addressed to an audience in the public square. Thus, as in *Lockhart*, Defendant seems uninterested in engaging in political discourse. Finally, in his own view, Defendant's words are "NO JOKE." In short, this case should be submitted to a jury because the government has offered "substantial evidence tending to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of letter would interpret it as a threat of injury." *Maisonet*, 484 F.2d at 1358.

This Court also rejects Defendant's reading of *Virginia v. Black*, 538 U.S. 343 (2003) as

4

requiring the government to allege an intent to intimidate or injure. *Black* could not be clearer on this point. The Court explicitly stated that the speaker of a true threat "need not actually intend to carry out the threat," because the proscription on threats is intended to protect individuals from fear and the disruption that fear engenders. *Id.* at 359-60.

Next, this Court rejects as premature Defendant's argument that the government's failure to provide discovery showing that the August 12, 2003 email was transmitted in interstate commerce warrants dismissal of Count Two. The Government should have an opportunity to prove this element at trial.

Last, the Court turns to a troubling question of statutory construction: whether UVA is a "person" for the purposes of 18 U.S.C. § 876(b). That statute provides:

> Whoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than twenty years, or both.

The Dictionary Act provides a definition of the term "person" that includes corporations, companies, associations, firms, partnerships, societies, joint stock companies and individuals. 1 U.S.C. § 1. This definition is to be used to determine the meaning of any Act of Congress "unless the context indicates otherwise." *Id.* The Supreme Court has applied this definition of "person" to the criminal statutes of Title 18. *See, e.g., United States v. A & P Trucking Co.*, 358 U.S. 121 (1958).

Defendant argues that ordinary principles of statutory construction require words to have the same meaning in a single sentence, that a threat to the "person" of an addressee would be nonsensical if "person" included corporate persons or governmental agencies, and therefore both

5

uses of "person" must refer only to natural persons.² Defendant cites in support of this argument *United States v. Brownfield*, 130 F. Supp. 2d 1177 (C.D. Cal.); *United States v. Raymer*, 71 Fed. Appx. 669, 670 (9th Cir. 2003) (unpublished opinion); and *United States v. Williams*, 376 F.3d 1048 (10th Cir. 2004). These cases all involve a different subpart of the Code, 18 U.S.C. §876(c), but the statutory language and issue raised in those cases is substantially similar to the issue Defendant raises.

The Court first notes that *Williams* is easily distinguishable, because due to the procedural posture of that case,³ the Tenth Circuit did not squarely face the issue Defendant presents. The trial court had instructed the jury (1) that "person" meant only "natural person," and (2) that the statutory language "addressed to any other person" meant only the addressee on the face of the envelope, as opposed to the salutee of the letter. *Williams*, 376 F.3d at 1050. The government objected to these instructions, so "the supplemental instruction did not become the law of the case." *Id.* at 1051-1052. The Tenth Circuit found the latter instruction to be an error of law, holding that "addressed to any other person" could mean the person addressed on the face of the letter or the salutee, and affirmed Defendant's conviction because the letter's greeting clearly referred to a natural person. *Id.* at 1052-53. Thus, the court did not review the first instruction.

The Court declines to follow *Brownfield* or *Raymer*. *Raymer* is unpublished, little more than a paragraph in length, and offers nothing in the way of explanation. *Brownfield*, though

---

²Defendant does not raise the argument that the University of Virginia is neither a corporation, company, association, firm, partnership, society, or joint stock companies for the purposes of 1 U.S.C. § 1.

³ The Tenth Circuit had to decide whether to affirm the defendant's conviction under § 876(c).

6

lengthier, is no more persuasive. The court there found the Dictionary Act not to apply because "[t]he language specifying 'the person' of the addressee or of another as the target of the threatened injury denotes the physical body of a person" and therefore could not be reconciled with a use of "person" in the same sentence that includes the other nonnatural entities listed in 1 U.S.C. § 1. *Brownfield* 130 F. Supp. 2d at 1180-81.

The Court is mindful of the "strong presumption that identical terms used in the same sentence of a statute carry the same meaning." *Yi v. Federal Bureau of Prisons*, 412 F.3d 526 (4th Cir. 2005). By the same token, however, "the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.* (quoting *General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004)). That both natural and nonnatural persons are subject to extortion is unquestionable, and nothing in 18 U.S.C. § 876(b) indicates that Congress intended only to protect the former. It is equally obvious that a nonnatural person cannot be kidnapped and has no "person" subject to injury—so obvious, in fact, that it goes without saying. Congress had no need to resort to an alternative word for "person" when used the second and third time in 28 U.S.C. § 876(b), because the range of "persons" subject to kidnapping and personal injury to one's "person" is logically limited to "natural persons." This is the kind of "variation" in the connection in which words are used which warrants the conclusion that the meaning of "person" could be used in a narrow and a broader sense within the same paragraph.

Defendant also argues that if Congress intended "person" to include all of the entities listed in the Dictionary Act, it would have adopted the same language used in 18 U.S.C. §875(b),

7

which states:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than twenty years, or both.

Again, the Court is aware that under ordinary principles of statutory construction, "where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress act intentionally and purposefully in the disparate inclusion or exclusion." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987). However, §§ 875 and 876 are not part of the same statute, as present-day § 876 was originally enacted almost two years before §875. *See* Act of July 8, 1932, ch. 464, § 1, 47 Stat. 649 (codified as amended at 18 U.S.C. §338(a)(1940)); Act of May 18, 1934, ch. 300, 48 Stat. 781 (codified as amended at 18 U.S.C. §408(d)(1940)).[4] Defendant's argument also appears to prove too much: the Court finds it unlikely that Congress would have intended to impose the same punishment (20 years) for the same essential conduct (threatening with the intent to extort), and yet arbitrarily to exempt conduct based on the identity of the extortion target in the threatening letter but not the threatening interstate communication context.

The Court therefore finds nothing in the context of 18 U.S.C. § 876(b) to indicate that the definition of "person" found in 1 U.S.C. § 1 should not apply.

Defendant's Motion to Dismiss will be DENIED in an order to follow.

It is so ORDERED.

---

[4] Nothing in the legislative history of either Act explains the difference in language.

8

The Clerk of the Court is hereby directed to send a copy of this Opinion to all counsel of record.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

10-14-05
Date

9